1
2
3
4                     UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    WILLIE JOHNSON, et al.,
                                              Case No.  15-cv-03585-RS
          Plaintiffs,
8
          v.
9                                             ORDER DENYING MOTION TO
                                              REMAND
     GRANCARE, LLC, et al.,
10
          Defendants.
11

12

13                             I. INTRODUCTION

14          This case arises out of the care and treatment of Willie G. Johnson, Jr., who passed away

15   while resident at the skilled nursing facility, Vale Healthcare Center ("Vale").  Johnson's estate,

16   along with his children and legal heirs, filed this action in Contra Costa County Superior Court

17   asserting claims for elder abuse, violation of the Patients' Bill of Rights, and wrongful death.

18   After defendants Grancare, LLC and Mariner Health Care Management Company ("MHMC")

19   removed on the basis of diversity jurisdiction, plaintiffs filed this motion to remand, arguing the

20   case lacks complete diversity.  Because defendant Remy Rhodes was fraudulently joined, and the

21   remaining defendants are completely diverse from plaintiffs, the motion is denied.

22                             II. BACKGROUND[1]

23          In August 2006, decedent Willie G. Johnson, Jr. took up residence at Vale Healthcare

24

25   _____
     [1] The factual background is based on the averments in the complaint, which are assumed to be true
26   for the purpose of assessing whether joinder was proper. *See Thomas v. Aetna Health of Cal., Inc.*,
     No. 1:10–cv–01906–AWI–SKO, WL 2173715, at *5 (E.D. Cal. June 2, 2011) ("In ruling on a
27   motion for remand where fraudulent joinder is alleged, a court must evaluate the factual
     allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor
28   of the plaintiff") (citations omitted).

United States District Court
Northern District of California

Center, a skilled nursing facility operating under a state license granted to Grancare, LLC. Johnson was seventy-eight years old at the time, and required assistance with mobility, bathing, and other activities of daily living. Vale ostensibly admitted him with knowledge of these conditions, but over the next eight years, denied Johnson the care he needed.

Specifically, Vale "failed to [follow] physician orders to apply ointment to Willie Johnson's skin, which caused his skin to dry, crack, and become painful," Compl. ¶ 62; failed to create or implement a plan to protect Johnson from pressure ulcers, "which caused him to develop pressure ulcers," *id.*; failed to create or implement a plan to protect Johnson from falling, "which caused him to fall on multiple occasions and suffer [both] physical injuries and mental impairments," *id.*; failed to provide Johnson with a sanitary environment, "which caused [him] to develop multiple infections," Compl. ¶ 64; and failed to turn, reposition, or otherwise ensure Johnson "was not left on his back and buttocks for unreasonable amounts of time," Compl. ¶ 63.

Johnson's inadequate treatment was the alleged product of "a scheme to place 'profits over people' at the facility." Compl. ¶ 39. According to plaintiffs, "[a]s part of their profit scheme," Vale "implemented cost cutting measures that included failing to hire competent staff, failing to train existing staff, failing to adequately capitalize the facility, and failing to otherwise operate the facility in compliance with state and federal law." Compl. ¶ 41. Vale apparently knew the scheme would result in inadequate care because it received "212 complaints, 110 deficiencies, and two class 'A' citations" from the California Department of Health between 2011 and 2014. Compl. ¶ 22.

Ultimately, Johnson suffered a fall, which led to hospitalization, and later, his death. This action followed. Plaintiffs are Willie Johnson, by and through his successor in interest, and Johnson's children and legal heirs, including Velma Bagby, William Johnson, Sr., Veronica Hudson, Eldridge Johnson, Cynthia Mackey, Latonya Morris, Willie Johnson, Arlana Johnson, Shonda Johnson, and Azalia Johnson.

Defendants are Grancare, LLC, doing business as Vale Healthcare Center, Mariner Health Care Management Company, Mariner Health Care Inc., Fundamental Administrative Services,

United States District Court
Northern District of California

1   LLC ("FAS"), Remy Rhodes—the administrator of Vale Healthcare Center—and various doe

2   defendants.

3        This action was originally filed on February 9, 2015 in Contra Costa County Superior

4   Court.  Defendant FAS was voluntarily dismissed on March 23, 2015. *See* Notice of Removal, Ex.

5   D.  The state court later dismissed defendant Mariner Health Care, Inc. for lack of personal

6   jurisdiction.  *See* Notice of Removal, Ex. E.  Grancare and MHMC removed the case on August 5,

7   2015, and plaintiffs filed a motion to remand approximately one month later.

8   **III. LEGAL STANDARD**

9        A defendant may remove to federal court "any civil action brought in a State court of

10   which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

11   Accordingly, removal jurisdiction exists where a case filed in state court presents a federal

12   question or involves diversity of citizenship and meets the statutory amount in controversy. *See* 28

13   U.S.C. §§ 1331, 1332.  Courts strictly construe the removal statute against finding federal subject

14   matter jurisdiction, and the defendant bears the burden of establishing the basis for removal.

15   *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009).

16   Where doubt exists regarding the right to remove an action, it should be resolved in favor of

17   remand to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.

18   2003).

19        Although complete diversity is required under § 1332, district courts may ignore the

20   fraudulent joinder of non-diverse defendants in determining whether diversity jurisdiction exists.

21   *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).  Fraudulent joinder "is a

22   term of art" that "does not reflect on the integrity of plaintiff or counsel." *Lewis v. Time Inc.*, 83

23   F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) (citation omitted).  Joinder is

24   fraudulent "[i]f the plaintiff fails to state a claim against a resident defendant, and the failure is

25   obvious according to the settled rules of the state." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313,

26   1318 (9th Cir. 1998) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

27        The standard for determining whether a defendant is fraudulently joined is similar to that

28

United States District Court
Northern District of California

of a 12(b)(6) motion to dismiss. *See Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975) ("Inasmuch as appellant's case against the individual defendants was sufficient to withstand a dismissal motion under [Rule] 12(b)(6), the joinder of claims against them was not fraudulent . . . ."). In determining whether a removed claim is viable, courts typically "look only to a plaintiff's pleadings . . . ." *Ritchey*, 139 F.3d at 1318 (citation and quotation marks omitted). "The review of the complaint, however, is constrained to the facts actually alleged therein; it does not extend to facts or causes of action that *could* be alleged via an amended complaint." *Pasco v. Red Robin Gourmet Burgers, Inc.*, No. 1:11–cv–01402–AWI–SKO, 2011 WL 5828153, at *3 (E.D. Cal. Nov. 18, 2011) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989)) (emphasis in original). When assessing whether joinder was proper, the court may go "somewhat further" by allowing a defendant to present additional facts demonstrating joinder was fraudulent. *See Ritchey*, 139 F.3d at 1318.

## IV. DISCUSSION

Plaintiffs do not dispute the amount-in-controversy requirement has been met, or that diversity of citizenship exists in relation to Grancare and MHMC. Nor do defendants dispute that Rhodes, a citizen of California, would destroy complete diversity if properly joined. The parties contest, however, whether Rhodes, who is named in two of the three claims in the complaint, is a proper party to this action. According to defendants, the complaint fails to state any cognizable claim against her.

### A. Elder Abuse and Neglect

The first claim alleges all defendants, including Rhodes, are liable for elder abuse under the Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"), Cal. Welf. & Inst. Code §§ 15610 *et seq.*[2] That statute provides certain enhanced remedies to plaintiffs who

---

[2] As a threshold matter, Johnson qualifies as an "elder" because he was seventy-eight years old when he assumed residence at Vale. *See* Cal. Welf. & Inst. Code § 15610.27 (defining "elder" as "any person residing in this state, 65 years of age or older"). Similarly, Rhodes likely qualifies as a "care custodian." *See id.* § 15610.17 (defining "care custodian" as "an administrator or an employee" of a "twenty-four-hour health facilit[y]," which includes "skilled nursing facilities" pursuant to Cal. Health & Safety Code § 1250).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  prove abuse of an elder.[3] *See id.* § 15657.  The Act "does *not* apply to simple or gross negligence

2  by health care providers." *Worsham v. O'Connor Hosp.*, 226 Cal. App. 4th 331, 336 (2014) (citing

3  *Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771, 785 (2004)).  Rather, a plaintiff must

4  prove "by clear and convincing evidence that . . . the defendant has been guilty of recklessness,

5  oppression, fraud, or malice in the commission of th[e] abuse." Cal. Welf. & Inst. Code § 15657.

6  *See also Delaney v. Baker*, 20 Cal. 4th 23, 31 (1999).

7      The allegations in the complaint fail to meet this standard.  As an initial matter, the

8  complaint makes little attempt to connect any claim to the actions of Rhodes.  Rhodes is identified

9  up front as Vale's administrator, with responsibility for the "day-to-day implementation of facility

10  policy" and the "screening of patients prior to admission to ensure the facility admit[s] only those

11  patients for whom it can provide adequate care." Compl. ¶ 7.  Beyond this introduction, virtually

12  every sentence that follows is addressed to *all* defendants collectively—none are directed

13  specifically at Rhodes.

14      With respect to elder abuse, plaintiffs aver, in general and conclusory terms,[4] that all

15  defendants "failed to protect Willie Johnson from health and safety hazards," including the

16  acquisition and development of certain injuries. Compl. ¶ 61.  As noted above, they assert all

17  defendants "failed to [follow] physician orders to apply ointment to Willie Johnson's skin, which

18  caused his skin to dry, crack, and become painful," Compl. ¶ 62; failed to create or implement a

19  plan to protect Johnson from pressure ulcers, "which caused him to develop pressure ulcers," *id.*;

20  

21  [3] The Act defines abuse as either "[p]hysical abuse, neglect, financial abuse, abandonment,
    isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering,"

22  or "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical
    harm or mental suffering."  Cal. Welf. & Inst. Code § 15610.07.  It further defines "neglect" as,

23  amongst other things, "[t]he negligent failure of any person having the care or custody of an elder
    or a dependent adult to exercise that degree of care that a reasonable person in a like position

24  would exercise." *Id.* § 15610.57.

25  [4] Plaintiffs note, for instance: "Defendants neglected Willie Johnson and failed to ensure he
    remained free from accident hazards," Compl. ¶ 29; "Defendants neglected Willie Johnson by

26  failing to exercise that degree of care that a reasonable person in a like position would exercise,"
    *id.* ¶ 48; "Defendants committed neglect by failing to protect Willie Johnson and allowing him to

27  suffer [injury]," *id.* ¶ 49.

28

failed to create or implement a plan to protect Johnson from falling, "which caused him to fall on multiple occasions and suffer [both] physical injuries and mental impairments," *id.*; failed to provide Johnson with a sanitary environment, "which caused [him] to develop multiple infections," Compl. ¶ 64; and failed to turn, reposition, or otherwise ensure Johnson "was not left on his back and buttocks for unreasonable amounts of time," Compl. ¶ 63.  In response, Rhodes attests she never rendered care to Johnson, and is not licensed to do so as Vale's administrator. Rhodes Decl. ¶ 3, 5.  Even setting that aside, however, the complaint offers no factual basis suggesting Rhodes personally participated in abusive or neglectful conduct.

The closest plaintiffs come to ascribing any specific act or omission to Rhodes is to aver that all defendants, "through their respective *administrators* failed to screen [Mr.] Johnson for admission and retention as a resident . . . as required to ensure the facility only admitted those residents for [whom] it could provide adequate care and services." Compl. ¶ 35 (emphasis added). Their theory aims to establish custodial neglect through a deliberate act of omission, averring defendants had the ability to employ adequate staff, "yet recklessly, intentionally, and/or with conscious disregard failed to do so." Compl. ¶ 46.  Rhodes denies the allegation and attests she was not employed by Vale when Johnson was admitted to the facility.  Rhodes Decl. ¶ 6.  More to the point, however, plaintiffs lack the factual allegations needed to support their "intentional understaffing" theory.  The complaint says nothing, for example, about the number of staff at the facility, Rhodes' involvement in hiring, Rhodes' conduct in response to surveys conducted by the public health department, or how reckless understaffing by Rhodes directly caused Johnson's injuries.

Lacking a specific factual basis for concluding that Rhodes—a non-clinician administrator—directly, personally, or actively participated in conduct constituting abuse or neglect, plaintiffs cannot state a claim for relief under the heightened standard incorporated by the Elder Abuse Act.  Count One is therefore insufficient to state a cause of action against Rhodes.

**B. Wrongful Death**

Plaintiffs' third claim asserts all defendants, including Rhodes, are liable for wrongful

death.  Compl. ¶ 72–78. Their efforts here fare no better.

Wrongful death is a statutory cause of action asserted when "the death of a person [is] caused by the wrongful act or neglect of another." Code Civ. Proc. § 377.60; *see also Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 794–98 (2010).  The cause of action belongs not to the decedent, but to certain categories of surviving heirs. *See* Code Civ. Proc. §§ 377.60(a)–(f)(1). The elements of the cause of action are "the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Boeken*, 48 Cal. 4th at 806 (citation and internal quotations omitted).

In the complaint, plaintiffs aver Johnson died on July 15, 2014, Compl. ¶ 73, and that his children "sustained loss of love, companionship, [and] comfort" as a consequence, *id.* ¶ 77. Nevertheless, the complaint fails to state a cause of action against Rhodes because it lacks factual allegations showing Rhodes' conduct caused Johnson's death.  The complaint does not point to an act or omission that serves as a basis for the wrongful death claim against Rhodes.  Instead, plaintiffs' aver all defendants "owed statutory, regulatory, and standard of care and reasonable person duties,"[5] Compl. ¶ 74, which were violated by "defendants' wrongful acts and omissions," Compl. ¶ 75, and "were the direct, actual, legal, and proximate cause" of Johnson's death, Compl. ¶ 75.  Applying that theory to Rhodes, plaintiffs are likely invoking the alleged understaffing of the facility, given that Rhodes was not involved in the care or treatment of Johnson.  That averment, however, is unsupported by facts describing Rhodes' involvement in the scheme or how it could have led to Johnson's injuries.  Once again, without a factual basis to support Rhodes' individual wrongdoing, plaintiffs cannot state a claim for relief against Rhodes.

## C. Theories of Secondary Liability

At the outset of the complaint, plaintiffs invoke several theories of secondary liability that

_____

[5] The complaint cites various statutes and regulations governing the licensing and certification of nursing facilities, but does not identify authority demonstrating how these regulations render a non-clinician administrator personally liable for substandard care.  Even assuming such a duty exists, plaintiffs have not included sufficient factual allegations showing how Rhodes breached her duties or caused Johnson's injuries.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    could serve as a basis for stating a cause of action against Rhodes.[6]  These theories, however, are

2    insufficiently pleaded to achieve that result.

3           Plaintiffs begin by asserting all defendants are "alter-egos of one another."  Compl. ¶ 18.

4    To establish an alter-ego theory of liability, a plaintiff must show "(1) there is such a unity of

5    interest and ownership that the individuality, or separateness, of the said person and corporation

6    has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would .

7    . . sanction a fraud or promote injustice." *Sec. Exch. Comm'n v. Hickey*, 322 F.3d 1123, 1128 (9th

8    Cir. (2003) (internal quotation marks and emphasis omitted).  Here, plaintiffs do not aver Rhodes

9    maintains an ownership interest in Vale, or that injustice would result if Rhodes and Vale are not

10   found to be one and the same. The alter ego theory is therefore inadequate to state a cause of

11   action against Rhodes.

12          Plaintiffs next assert all defendants operated Vale as a joint venture. Compl. ¶ 14, 26.  This

13   theory is insufficient to state a cause of action against Rhodes because plaintiffs do not aver she

14   had an ownership interest in Vale. *See Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App.

15   4th 343, 370 (2008) ("There are three basic elements of a joint venture: the members must have

16   joint control over the venture (even though they may delegate it), they must share the profits of the

17   undertaking, and the members must each have an ownership interest in the enterprise."). *See also*

18   *Simmons v. Ware*, 213 Cal. App. 4th 1035, 1049 (2013) (noting "the relationships of employer-

19   employee and joint adventurers are incompatible and cannot exist together between the same

20   parties in relation to the same transaction").

21          Plaintiffs further suggest Rhodes could be liable on an agency theory. Compl. ¶ 18.  To

22   establish an agency relationship "a party must demonstrate the following elements: (1) there must

23

24   [6] Plaintiffs contend, for example, all defendants "were the knowing agents and/or alter-egos of one
     another, and each of their officers, directors, and managing agents directed, approved and/or
25   ratified all of the acts and omissions of each of the other, and their agents and employees, thereby
     making each of them vicariously liable for the acts and omissions of their co-defendants, their
26   agents and employees . . . . Moreover, through their managing agents, defendants, and each of
     them, agreed, approved, authorized, ratified and/or conspired to commit all of the acts and
27   omissions alleged herein." Compl. ¶ 18.

28

be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking." *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004). Here, plaintiffs do little more than aver all "defendants were the knowing agents . . . of one another." Compl. ¶ 18. Without additional allegations to support the relationship, their agency claim must fail.

Finally, plaintiffs aver all defendants "conspired to commit all of the acts and omissions alleged" in the complaint. Compl. ¶ 18. Conspiracy, however, "requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act by one or more of the parties to such agreement in furtherance of the conspiracy." *People v. Johnson*, 57 Cal. 4th 250, 257 (2013). Plaintiffs make no such averments regarding Rhodes. Their conspiracy cause of action therefore falls short.

### V. CONCLUSION

Plaintiffs have failed to state a cause of action against Rhodes, and the failure is clear according to California law. *See Ritchey*, 139 F.3d at 1318. Rhodes was thus fraudulently joined to the present action. The motion to remand is denied, and defendant Remy Rhodes is dismissed.[7]

**IT IS SO ORDERED**.

Dated: November 9, 2015

RICHARD SEEBORG
United States District Judge

_____

[7] Plaintiffs' request for fees and costs under 28 U.S.C. § 1447(c) is correspondingly denied.

United States District Court
Northern District of California